UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| LARRY AND SUZANNE SWISHER, husband and wife, | NO: 11-CV-5105-TOR |
| Plaintiffs, | ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| v. | |
| JP MORGAN CHASE BANK, a national banking institution | |
| Defendant. | |

BEFORE THE COURT is Defendant's Motion for Summary or Partial Summary Judgment (ECF No. 29). Also before the Court are the following motions: Defendants' Motion to Exclude Plaintiffs' Expert Testimony (ECF No. 35), Plaintiffs' Motion to Strike Declaration in Support of Motion for Summary Judgment (ECF No. 52), Plaintiffs' Motion to Strike Defendants' Motion for Summary Judgment (ECF No. 57), Defendant's Motion to Strike Inadmissible Statements from Plaintiffs' Declarations (ECF No. 73), and Plaintiffs' Motion to Strike Second Declaration in Support of Motion for Summary Judgment (ECF No.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 1

80).  These matters were heard with oral argument on September 12, 2012.[1]

George Fearing appeared on behalf of Plaintiffs.  Roy Stegena appeared on behalf

of Defendant.  Subsequently, the Court stayed the case and referred the matter to a

Magistrate Judge to conduct a settlement conference.  ECF No. 95.  Settlement

negotiations were not productive, thus, the present motions are ripe for decision.

The Court has reviewed the relevant pleadings and the supporting materials, and is

fully informed.

BACKGROUND

Plaintiffs claim Defendant violated the Fair Credit Reporting Act ("FCRA")

by falsely reporting to credit reporting agencies that two of Plaintiffs' mortgage

payments were late. Defendant responds that at the time Plaintiffs filed their

complaint, Defendant's duty to investigate under the FCRA had not been triggered

because Plaintiffs had not yet provided notice to the credit reporting agencies

("CRA's").  Defendant also claims that after receiving notice, it conducted a timely

and proper investigation.[2]

_____

[1] Most recently, Plaintiffs filed a Motion for Extension of Time to File Second

Supplemental Declaration of Suzanne Swisher (ECF No. 101).

[2] Defendant also argues that Plaintiffs fail to state a claim for defamation of credit

under Washington law (this claim was in their initial complaint). ECF No. 31 at

17-19.  However, neither Plaintiffs' amended complaint, filed on July 21, 2011,

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ~ 2

FACTS

In 2006 Plaintiffs Larry and Suzanne Swisher (together "Swishers") bought a townhouse in Loma Linda, California for their daughter and son-in-law. The Swishers borrowed $272,000 to purchase the home, and the mortgage was, and still is, serviced by Defendant JP Morgan Chase ("Chase").  Reardon Decl., ECF No. 34 at ¶ 3.  According to the Swishers, as of October 22, 2010, their FICO scores were 757 (Equifax), 719 (Experian), and 771 (TransUnion).  Suzanne Swisher Decl., ECF No. 62, Ex. 1.  In June of 2010, the Swishers arranged a short sale with Chase, claiming that the market decline and health problems of Mr. Swisher made it difficult to make mortgage payments.  ECF No. 34 at ¶ 4, Ex. 1.  The short sale closed on January 31, 2011, at a loss to Chase of $116,461.02, and the money was wired to Chase.  *Id*. at ¶ 5, Ex. 2.

According to Chase customer service records, Chase informed the Swishers on January 17, 2011, that the last two payments on their mortgage would be held in escrow until the short sale closed.  *Id*. at ¶ 6, Ex. 3. The Swishers also testified that their realtor told them they were not required to make payments after the agreement to sell the home was reached.  ECF No. 59 at 3.  Despite this advice, according to Mrs. Swisher's testimony, she paid the December 2010 payment with

nor Plaintiffs' response to the motion for summary judgment, indicate a state law claim. Thus, the Court determines this claim has been abandoned.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 3

a Merrill Lynch check at the drive-up window at the Pasco branch of Chase.  *Id*.

She also testified that she paid the January 2011 by "wire transfer."  *Id*.  Chase

testified it has no record that either of these payments was made according to their

payment history and customer service notes records.  Reardon Decl., ECF No. 34

at ¶ 7.  The check was never cashed.[3]  ECF No. 59 at 6.

  In February 2011, the Swishers received a letter from a collection agency

stating that they were delinquent on their mortgage payments.[4]  ECF No. 59 at 3.

Mrs. Swisher testified that she talked to Chase agent Bobbie Jackson who told her

that the December and January payments were not credited to her account because

of the pending short sale.  ECF No. 59 at 3-4.  Ms. Jackson allegedly told Mrs.

Swisher that the payments were "set aside" (held in escrow) and that the payments

---

[3] Chase now insists that it would have negotiated a check if it had received a

payment check from the Swishers. Reardon Decl. II, ECF No. 78 at ¶ 5.

[4] As indicated in Section III below, Chase challenges the admissibility of

statements regarding collection letters because none of them are provided as part of

the record. They assert that the testimony about the letters is double hearsay and

violates the best evidence rule because originals or copies are not provided.  ECF

No. 74 at 5.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ~ 4

would not be reported as late and would not affect the Swisher's credit score.[5]   On

February 11, 2011, Mrs. Swisher sent a letter to Chase indicating that the CRAs

were showing delinquencies and asking the payments to be applied to the account.

ECF No. 34 at ¶ 8, Ex. 5.  This letter stated that both checks were written from

their account at Yakima Savings and Loan, and that both checks were processed

and cleared.[6]  *Id*.

On February 15, 2011, Chase sent a fax to the Credit Bureau Dispute Center

informing them that Chase made an error in claiming that $3,773 (2 mortgage

payments) was past due, and that all payments were made through escrow closing

on the short sale in January.  ECF No. 34, Ex. 6.  A representative of Chase

testified that at this time it "suppressed" the monthly reporting to the CRAs so

monthly reports were not generated.  *Id*. at ¶ 9.

Around the same time Mrs. Swisher also allegedly sent a letter "likely over

the internet" to the three major credit reporting agencies to correct any derogatory

---

[5] Ms. Jackson also allegedly told Mrs. Swisher that this is the way Chase conducts

business and "there is not enough trees in the world to write a letter for every

situation."  ECF No. 59 at 4.

[6] The Swishers never address why they this letter indicated that they made the

payments in a different way than is claimed in this lawsuit (i.e. now they claim one

check from different account and wire transfer).

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ~ 5

information.  Suzanne Swisher Decl., ECF No. 62 at ¶ 9-10.  Whether or not this letter was sent was heavily disputed by the parties.  Most recently, Mrs. Swisher submitted a second supplemental declaration containing a copy of a facsimile transmittal sheet she purportedly sent to Equifax, Transunion (sic), and Experian dated February 24, 2011.[7]  ECF No. 102-1 at 1.  Mrs. Swisher also provided an e-mail response she purportedly received from Equifax on February 25, 2011.  ECF No. 102-1 at 2.  While acknowledging receipt of the "fax", that correspondence informed Mrs. Swisher what she was required to do in order to file a dispute:

> There are three ways to dispute inaccurate credit reporting information or check on the status of your dispute with Equifax.
>
>  – Online at www.investigate.equifax.com and your results will be returned to you online within 30 to 45 days.
>
>  – Via telephone by calling the toll free number located on the current copy (last 30 days) of your Equifax Credit Report$^{TM}$.  You will need the confirmation number also located on your credit report.
>
>  – In writing: Equifax Inc., P.O. Box 740256, Atlanta, GA, 30374-0256
>
> You must contact the other two credit reporting agencies, TransUnion and Experian, directly to initiate a dispute and/or check on the status of a dispute filed with those companies.

ECF No. 102-1 at 2.

---

[7] Curiously, the facsimile cover only reflects two destination telephone numbers and a 3-page attachment which has not been produced.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 6

On February 22, 2011, the Swisher's received a letter from Chase stating that it requested an "amendment" to their credit profile and notified the major CRAs to correct the issue. ECF No. 62, Ex. 4. On February 25, Chase requested front and back copies of the cancelled checks (as indicated by the February 11, 2011 letter from Mrs. Swisher) to confirm that the payments were made. ECF No. 34, at ¶ 11. By March 9, 2011, the Swishers allege their FICO score decreased to 700. ECF No. 62, Ex. 5. On March 3, 2011, Chase representative Larry Thode sent another letter stating that Chase had received the January 2011 payment. ECF No. 34, Ex. 7. Chase now claims this letter was sent in error. *Id.* at ¶ 10. Also Chase offers evidence that as of March and April of 2011, its research indicated that the Swisher's loan account was reported as "paid or closed account, zero balance." *Id.* at ¶ 12.

On July 14, 2011, the Swishers' attorney sent a letter to the four major CRAs seeking a correction of the mistakes on their credit report. ECF No. 62, Ex. 7. On July 20, 2011, Chase received notice from TransUnion that the Swishers were disputing the credit reporting. ECF No. 34 at ¶ 13. Upon receipt of the notice, Chase conducted an investigation regarding the account and found that its earlier reporting to the CRAs in February 2011 was incorrect, and the "correct reporting should be that the account was paid in full for less than the balance, 30 days delinquent, and in dispute because Chase did not receive the December 2010

1    and January 2011 payments." *Id*. Chase reported this information to TransUnion

2    on August 4, 2011.[8]  *Id*. at ¶ 13-14, Ex. 10.  According to Mrs. Swisher she did not

3    find out until spring of 2012 that Chase was claiming it never received the

4    mortgage payments.  ECF No. 62 at ¶ at 18.

5         In 2011, Mr. Swisher entered into a purchase and sale agreement to buy a lot

6    in Kennewick, Washington upon which to build a dental office.  ECF No. 59 at 6.

7    He put down $2,500 in earnest money.  Mr. Swisher sought financing through

8    Wells Fargo Practice Finance ("Wells Fargo") and Henry Schein Financial

9    Services ("Henry Schein").  Mr. Swisher testified that John Campbell at Wells

10   Fargo and Al Brown at Henry Schein told the Swishers they needed to clear their

11   credit report of delinquent payments in order to receive favorable financing.  Larry

12   Swisher Decl., ECF No. 63 at ¶ 11-12, Ex. 4.  According to the Swishers neither

13   representative mentioned difficulty in obtaining financing was due to the short

14   sale.  ECF No. 59 at 7.  Mr. Swisher lost the $2,500 in earnest money because he

15   did not secure financing.  *Id*.  The Swishers also attempted to refinance another

16   _____

[8] Chase also received a notice of dispute from Experian on August 19, 2011, and

17   responded with the same results on August 22, 2011.  ECF No. 34 at ¶ 13-14,

18   Ex. 10. Chase has no record of notice of a dispute from Innovis or Equifax in July

19   or August 2011, but these agencies received copies of the responses to TransUnion

20   and Experian.  *Id*. at ¶ 15.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ~ 8

1    townhouse they owned in Loma Linda, as well as their residence in Pasco, "in

2    summer or fall of 2011" and were purportedly told by Brenda at the Wells Fargo

3    Kennewick branch that "refinancing would not benefit us until we corrected the

4    derogatory comments made by Chase bank to our credit." [9]  ECF No. 63 at ¶15.

5        Mrs. Swisher claims she had "restless, if not sleepless, nights, worrying

6    about the problem."  ECF No. 62 at ¶ 19.  Mr. Swisher also testified that he has

7    had "restless sleep" and "expended emotional energy" because of the "frustration"

8    of dealing with Chase on these issues.  ECF No. 63 at ¶ 16.  Mr. Swisher calculates

9    that he will lose $1,890,000 in "additional income" that he would have had if he

10   could have built the new dental office.  *Id*. at ¶ 17.  They also estimate lost savings

11   by not being able to refinance their other properties at $36,000 and $60,000,

12   respectively.  *Id*.

DISCUSSION

13

14   **I.    Plaintiff's Motion to Strike Defendant's Summary Judgment Motion**

15       On July 26, 2012, the Swishers filed a Motion to Strike Chase's Motion for

16   Summary Judgment on the grounds that Chase has failed to comply with its

17   discovery obligations.  ECF No. 57 at 1.  Chase responds that Plaintiffs' motion is

18   moot because Chase's alleged failure to provide complete discovery responses was

19   adjudicated by the Court in its August 1, 2012 Order that granted in part, and

20

---

[9] Chase challenges this statement as inadmissible hearsay. ECF No. 74 at 4.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ~ 9

denied in part, the Swishers' Motion to Compel.  ECF No. 69 at 2.  The Court

expects that Chase has since fully complied with the Order.  Accordingly, the

Motion to Strike Chase's Summary Judgment Motion is denied as moot.

## II.    Plaintiff's Motions to Strike Declaration in Support of Motion for Summary Judgment

Under FRCP 56(c)(4), "[a]n affidavit or declaration used to support or

oppose a motion must be made on personal knowledge, set out facts that would be

admissible in evidence, and show that the affiant or declarant is competent to

testify on the matters stated."  Fed. R. Civ. P. 56(c)(4).  Personal knowledge can be

gained from a review of the contents of files and records.  *Wash. Cent. R. Co., Inc.*

*v. Nat'l Mediation Bd.*, 830 F. Supp. 1343, 1353 (E.D. Wash. 1993).  "Based on

personal knowledge of the files and records, a declarant may testify to acts that she

or he did not personally observe but which are described in the record, including

requests or statements by third persons made to someone other than the declarant."

*Id*.

The Swishers ask the Court to strike Thomas E. Reardon's declarations

because his name was "withheld" during the discovery process and not disclosed in

Chase's initial disclosures, or in answer to a pertinent interrogatory, as a person

with knowledge of facts concerning the case.  ECF No. 52 at 1-2.  Chase responds

that it provided supplemental disclosures in accordance with the Court's August 1,

2012 Order, and that Mr. Reardon's declaration is based on personal knowledge

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ~ 10

1    gained from his review of business records.  ECF No. 72 at 4.  In its reply, the

2    Swishers acknowledge that Chase disclosed Mr. Reardon's name as required in the

3    Court's Order, but argue that he does not have the requisite personal knowledge

4    because he does not indicate he is a custodian of the records in his first declaration,

5    and asserts no basis of knowledge to assert that the records were prepared in the

6    regular course of business.  ECF No. 82 at 2-3.

7        In both of his declarations, Mr. Reardon declares that he has personal

8    knowledge "based upon [his] review of the [business] records relating to the Loan

9    maintained by Chase in the ordinary course of business."  ECF No. 34 at ¶ 2; ECF

10    No. 78 at ¶ 2.  Mr. Reardon is the Vice President of Litigation Support Unit at

11    Chase.  ECF No. 34 at ¶ 1.  The Swishers cite to no binding or persuasive authority

12    to support striking the declaration of a witness in support of a motion for summary

13    judgment.  Thus, the Court finds that Mr. Reardon may testify based on his

14    personal knowledge gained through review of the business records relating to the

15    Swishers' loan.  The Court denies both of the Swishers' Motions to Strike Mr.

16    Reardon's Declarations.

17    **III.    Defendant's Motion to Strike Inadmissible Statements from Plaintiff's Declaration**

18        First, Chase contends that the statements in Mr. Swisher's declaration

19    attributed to John Campbell and Al Brown, a letter purportedly signed by John H.

20    Campbell of Wells Fargo, statements referring to values assessed by the

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ~ 11

1   government, and statements attributed to "Brenda at the Wells Fargo Kennewick

2   branch" should all be excluded as inadmissible hearsay.  Larry Swisher Decl., ECF

3   No. 63, ¶¶ 6, 12, 13, 15, Ex. 4.  As indicated below in section IV, the Court does

4   not rely on any of this evidence for the substance of its ruling on summary

5   judgment.  Thus, the Court declines to strike these statements and exhibits.

6        Next, Chase argues that "screen shots" of credit scores offered as evidence

7   are inadmissible hearsay and unauthenticated.  Suzanne Swisher Decl., ECF No.

8   62, ¶ 3, 14, 17, Ex. 1, 5, 8; Larry Swisher Decl., ECF No. 63, ¶ 18, Ex. 5-8.  Chase

9   offers an unreported case from the Eastern District of Virginia that held screen

10  shots of plaintiff's credit report were inadmissible and unrecognized by an

11  exception.  *See McKinney v. Haller*, 2010 WL 4853306, *3 (E.D. Va. 2010).  The

12  Swishers respond that the evidence offered is actual credit reports, not screen

13  shots.  ECF No. 85 at 2.  They cite two Ninth Circuit cases that held a credit report

14  was only offered to show that the statement was made, rather than for its truth, and

15  even if the report was inadmissible the testimony of the plaintiff that he had

16  reviewed and discovered the disputed information was admissible.  *Drew v.*

17  *Equifax Information Services, LLC*,  690 F.3d 1100, 1108 (9th Cir. 2012); *Gorman*

18  *v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1164 (9th Cir. 2009).  The Court

19  agrees with the Swishers, and declines to strike these statements and exhibits.

20

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ~ 12

1    Last, Chase argues that Mrs. Swisher's statement that she sent a letter to the

2    three CRAs in February of 2011 seeking to "correct the erroneous payment

3    information" that was "likely sent over the internet" is inadmissible under (1) the

4    best evidence rule and/or (2) spoliation.  Suzanne Swisher Decl., ECF No. 62, ¶ 10.

5    Chase asks the court to exclude oral testimony relating to this letter or draw an

6    inference adverse to Plaintiff's position because the Swishers had notice that the

7    documents were potentially relevant to litigation and failed to preserve the

8    evidence.  *See Leon v. IDX Systems Corp.*, 464 F.3d 951, 959 (9th Cir. 2006); *see*

9    *also In re Napster, Inc. Copyright Litigation*, 462 F.Supp.2d 1060, 1067 (N.D. Cal.

10    2006) ("[a]s soon as a potential claim is identified, a litigant is under a duty to

11    preserve evidence which it knows or reasonably should know is relevant to the

12    action.").  Chase also notes that the Swishers have not attempted to obtain their

13    alleged letter to the CRAs by subpoena, nor do they claim any attempt to retrieve

14    the document in any way.  ECF No. 90 at 9.

15    The Swishers respond that this letter "is not critical to the Swishers' case,

16    since they also sent a letter in July 2011."  ECF No. 85 at 8.  However, if the terms

17    of the writing are material, "the original writing must be produced unless it is

18    shown to be unavailable for some reason other than the serious fault of the

19    proponent."  *Seiler v. LucasFilm, Ltd.*, 808 F.2d 1316 (9th Cir. 1986) (citing

20    McCormick on Evidence § 230 at 704).  The Swishers argue that because of the

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ~ 13

1   "peculiarities of the Internet, the failure to print a copy is understandable" and

2   testimony concerning the letter should not be precluded.  ECF No. 85 at 8.

3          Contrary to the Swishers' argument, the Court finds that whether or not Mrs.

4   Swisher communicated with the CRAs is in fact "critical" to the Swishers' case.

5   As indicated below, whether or not proper notice was provided under the FCRA is

6   largely dependent on whether Mrs. Swisher did send notice to the CRAs over the

7   internet in February of 2011.  The letter sent in July of 2011 standing alone does

8   not comply with the statutory 30-day notice allowing Chase to investigate this

9   claim before the lawsuit was filed.  That said, the Court discerns no evidence that

10  Mrs. Swisher intentionally destroyed evidence of her alleged contact with the

11  CRAs.  There is no indication of willfulness, fault, or bad faith on her part.  Rather,

12  at the time when she allegedly sent the letter, she failed to preserve a copy and did

13  not anticipate future litigation.  The original Complaint was filed in state court on

14  June 2, 2011.  Thus, the Court finds that Mrs. Swisher's failure to preserve a copy

15  of a communication sent back in February of 2011, while regrettable, was

16  excusable under the circumstances.  The Court finds that testimony regarding this

17  communication is admissible.  For these same reasons, the Court will grant leave to

18  file the late Second Supplemental Declaration of Mrs. Swisher which provides the

19  cover facsimile page of her communication and an e-mail response from Equifax.

20

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ~ 14

1  ECF No. 102.  Defendants' motion to strike inadmissible statements and exhibits

2  from Plaintiffs' declarations is denied.

3  **IV.    Defendant's Motion for Summary or Partial Summary Judgment**

4          The Court may grant summary judgment in favor of a moving party who

5  demonstrates "that there is no genuine dispute as to any material fact and that the

6  movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In ruling

7  on a motion for summary judgment, the court must only consider admissible

8  evidence.  *Orr v. Bank of America, NT & SA*, 285 F.3d 764 (9th Cir. 2002).  The

9  party moving for summary judgment bears the initial burden of showing the

10  absence of any genuine issues of material fact.  *Celotex Corp. v. Catrett*, 477 U.S.

11  317, 323 (1986).  The burden then shifts to the non-moving party to identify

12  specific facts showing there is a genuine issue of material fact.  *See Anderson v.*

13  *Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).  "The mere existence of a scintilla

14  of evidence in support of the plaintiff's position will be insufficient; there must be

15  evidence on which the jury could reasonably find for the plaintiff."  *Id.* at 252.

16  For purposes of summary judgment, a fact is "material" if it might affect the

17  outcome of the suit under the governing law.  *Id.* at 248.  Further, a material fact is

18  "genuine" only where the evidence is such that a reasonable jury could find in

19  favor of the non-moving party.  *Id.*  The Court views the facts, and all rational

20

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ~ 15

inferences therefrom, in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 327, 378 (2007).

### A. Notice Requirement in the FCRA

The FCRA imposes duties on "furnishers" of credit information to CRAs. 15 U.S.C. § 1681s-2. Under subsection (a), a furnisher has a general duty "to provide accurate information" to a consumer reporting agency ("CRA"). § 1681s-2(a). Subsection (b) outlines duties imposed on furnishers that are triggered upon "notice of dispute" from a CRA. § 1681s-2(b). The FCRA creates a private right of action for "willful or negligent noncompliance" with its requirements, but this right of action is limited to claims arising under subsection (b).[10] § 1681s-2(c), (o); *see also Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1154 (9th Cir. 2009).

It is well settled in the Ninth Circuit that a private cause of action against a furnisher of information under the FCRA is not triggered until after the furnisher receives notice of a dispute from a CRA. *Gorman*, 584 F.3d at 1154*; see also*

---

[10] The provisions of § 1681s-2(a) are "enforced exclusively … by the Federal agencies and officials and [certain] State officials …." 15 U.S.C. § 1681s-2(d). Thus, there is no private right of action for a violation of § 1681s-2(a), and any purported claims by the Swishers against Chase for falsely reporting information to CRAs will not be considered by the Court.

*Drew v. Equifax Information Services, LLC*, 690 F.3d at 1106.  Notice by a consumer directly to the furnisher is not sufficient to trigger the furnisher's duty to investigate disputed information.  *Id*.  After a furnisher receives proper notice of a dispute from a CRA, the furnisher has 30 days to perform the required investigation and review. § 1681s-2(b)(2).

Chase argues that the Swishers had no cause of action at the time their FCRA claim was filed because they did not provide notice to the CRAs and allow Chase the statutorily prescribed 30 days to investigate the disputes before they filed their claim.  ECF No. 31 at 4.  According to Chase's timeline,[11] the Swishers filed their first complaint on July 7, 2011, but did not send notice to the CRAs until July 14, 2011.  ECF No. 31 at 3.  Chase contends it did not receive notification from the CRAs until July 20, 2011 (TransUnion) and August 19, 2011 (Experian).  Reardon Decl., ECF No. 34, ¶ 13-14.  The Swishers then filed an Amended Complaint on July 22, 2011, well before Chase's thirty day deadline to respond to the dispute.  ECF No. 31 at 3.  Chase argues that it responded to these disputes in a timely manner, respectively, on August 4, 2011 and August 22, 2011.  *Id*.

---

[11] The dates provided by the Defendant are slightly different than those identified by the Court, as will be seen in the sections below.  This does not affect the substantive analysis.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 17

1    The Swishers acknowledge the applicability of the FCRA notice

2    requirement, but make a policy argument that courts have observed the difficulties

3    of navigating the statute and "are frequently distraught to bar consumer claims on

4    notice technicalities."  ECF No. 59 at 10 (citing one case from the Southern

5    District of New York).  Next, the Swishers claim they repeatedly notified Chase

6    directly about the inaccurate information.  On February 15, 2011, a Chase agent,

7    Larry Thode, sent a letter to the Swishers indicating that he had contacted the

8    CRAs to request that they amend their credit profile.  Suzanne Swisher Decl., ECF

9    No. 62, ¶ 13, Ex. 4.  The Swishers also argue that they provided notice to the

10    CRAs through a letter from their attorney on July 14, 2011.  ECF No. 59 at 11.

11    Last, the Swishers argue that around February of 2011, Mrs. Swisher sent notice to

12    the three major credit reporting agencies "likely sent over the Internet."  Suzanne

13    Swisher Decl., ECF No. 62, ¶ 10.  She was unable to find a copy of the letter, and

14    asks the Court to "infer," in combination with Larry Thode's letter indicting

15    contact with the CRAs, that a CRA must have provided statutorily adequate notice

16    to Chase.  ECF No. 59 at 12.  Mrs. Swisher's second supplemental declaration

17    answers some of these questions, but does not establish that any CRA provided

18    statutorily adequate notice to Chase.  *See* ECF No. 102.

19    The Court finds the Swishers' policy arguments unavailing.  The Swishers'

20    claim that they contacted Chase about the inaccurate information is similarly

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ~ 18

unsuccessful, because notice directly to the furnisher does not trigger a duty under the FCRA. *Gorman*, 584 F.3d at 1154. Thus, the Court is left to consider whether the Swishers' July 14, 2011 letter, or their February 24, 2011 contact with the CRAs, is sufficient to trigger Chase's duty to investigate alleged inaccuracies in its reporting. The Swishers cite several non-binding cases for the proposition that a determination of whether the furnisher received notice from a CRA is a factual inquiry. ECF No. 59 at 11. However, these cases are all distinguishable from the posture of this case because they challenge the sufficiency of the notice allegation in a motion to dismiss, rather than a motion for summary judgment. *See Carlson v. TransUnion, LLC*, 259 F.Supp.2d 517, 520 (N.D. Tex. 2003); *DiMezza v. First USA Bank, Inc.*, 103 F.Supp.2d 1296, 1301 (D.N.M. 2000); *Lang v. TCF Nat. Bank*, 249 Fed. Appx. 464, 466-67 (7th Cir. 2007) (stating that the consumer was not in a position to allege notification when he filed his complaint, but the furnisher "might have a compelling argument for summary judgment if it can demonstrate undisputably [sic] that a CRA did not notify it of [plaintiff's] dispute.").

It is undisputed that the Swishers sent a letter to the CRAs informing them of "false" information reported by Chase on July 14, 2011. ECF No. 62-1. The amended complaint, including allegations that they provided notice to the CRAs, was filed on July 21, 2011. ECF No. 7, Att. #1. Chase testified that they received

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 19

their first notice of the dispute from a CRA on July 20, 2011.  ECF No. 34 at ¶ 13.

Therefore, Chase's obligations under the FCRA were already triggered at the time

the amended complaint was filed.  However, under the statute, Chase had 30 days

from the time it received notice from the CRAs to conduct its investigation and

report back to the CRAs.  *See* § 1681s-2(b)(2).  Therefore, if notice was received

on July 20, 2011, then the Swishers had no cause of action before August 20, 2011.

Thus, the viability of the Swishers' case hinges on its contention that the

facsimile provided by Mrs. Swisher on February 24, 2011 satisfies the FCRA

notice requirement.  Prior to locating the facsimile cover sheet and the e-mail

correspondence from Equifax, the only evidence offered by Mrs. Swisher was her

sworn testimony on July 24, 2012 that she sent a letter to the three major reporting

agencies in February 2011 to "correct the erroneous payment information.

Suzanne Swisher Decl., ECF No. 62 at ¶ 10.  She stated that this letter was "likely

sent over the Internet."  *Id.*  However, in answers to interrogatories one month

earlier, the Swishers did not list this contact in answer to the question asking them

to identify the date, manner, and substance, of the notice given to CRAs.  Stegena

Decl., ECF No. 33, Ex. B., p. 40, 54.  The Swishers only indicated that they gave

notice in writing on July 14, 2011, and that Chase gave notice on their behalf.  *Id.*

This testimony is glaringly inconsistent.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ~ 20

1    While the recent Second Supplemental Declaration of Mrs. Swisher answers

2    some questions, still lacking is proof that she properly filed a dispute with any one

3    of the three major CRAs.  Moreover, the Swishers provide absolutely no evidence

4    on the pertinent issue, which is whether or not Chase <u>received</u> notice from a CRA.

5    *Gorman,* 584 F.3d at 1154; *see also Rogers v. JPMorgan Chase Bank, N.A.*, No.

6    C11-1689JLR, 2012 WL 2190900 (W.D. Wash. June 13, 2012) (granting summary

7    judgment because letter from CRA to furnisher still did not establish that furnisher

8    received specific notice of the dispute).  The Court rejects the Swishers' insistence

9    that the letter from Larry Thode indicating that he contacted the CRAs, in

10   combination with Mrs. Swisher's alleged contact with the CRAs, is enough to

11   "infer" proper notice under the FCRA.  The statute clearly states that Chase's duty

12   is triggered only upon <u>receipt</u> of notice from a CRA.  The only evidence in the

13   record is that Chase received this notice on July 20, 2011, and the Swishers

14   brought their claims on July 21, 2011, well before the statutorily prescribed 30 day

15   deadline for Chase to conduct an investigation.  Consequently, even in the light

16   most favorable to the Swishers, there is no evidence to establish that Chase failed

17   to comply with their duty to investigate under the FCRA, and Chase is entitled to

18   judgment as a matter of law.

19   //

20   //

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ~ 21

**B. Duty to Investigate**

After a furnisher receives proper notice of a dispute as to the accuracy of information provided to a CRA, the furnisher must:

(A) conduct an investigation with respect to the disputed information;

(B) review all relevant information provided by the consumer reporting agency pursuant to section 1681i(a)(2) of this title;

(C) report the results of the investigation to the consumer reporting agency;

(D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis; and

(E) if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1), for purposes of reporting to a consumer reporting agency only, as appropriate, based on the results of the reinvestigation promptly--

    (i) modify that item of information;

    (ii) delete that item of information; or

    (iii) permanently block the reporting of that item of information.

15 U.S.C. § 1681s-2(b)(1).  Pursuant to Ninth Circuit law, a furnisher's investigation under § 1681s-2(b) may not be unreasonable.  *Gorman*, 584 F.3d at 1155-57 ("an 'investigation' requires an inquiry likely to turn up information about the underlying facts and positions of the parties, not a cursory or sloppy review of the dispute.").  The question of reasonableness is generally for the jury to decide,

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 22

however, summary judgment may be appropriate "when only one conclusion about the conduct's reasonableness is possible." *See In re Software Toolworks Inc.*, 50 F.3d 615, 621-22 (9th Cir. 1994) (*quoting West v. State Farm Fire & Casualty Co.*, 868 F.2d 348, 350 (9th Cir. 1989)).

Chase contends that upon receipt of notice from a CRA in July 2011, it investigated the account and discovered that the Swishers' loan account was paid off for less than the full balance (short sale), that one payment was more than 30 days delinquent, and that the Swishers' disputed the account. ECF No. 31 at 6. Chase further maintains that Chase's monthly credit reporting was "suppressed" beginning in February 2011, based on the Swishers' dispute. *Id.* Upon receiving notice from several CRAs as to the Swishers' dispute, Chase sent responses to TransUnion on August 4, 2011 and to Experian on August 22, 2011. Chase also claims that its responses were accurate because the Swishers "concede" that they never made the two mortgage payments. ECF No. 31 at 6-7.[12]

---

[12] Chase bases this argument on testimony by Mrs. Swisher that the funds for the payments never left the Swishers' account. ECF No. 31 at 7. Additionally, Chase highlights the inconsistency in the Swishers' account of how they made the 2 payments. *Id.* In a letter to Chase in February 2011, the Swishers' claimed they made the payment from their Yakima Federal Savings and Loan account. ECF No. 34, ¶ 8, Ex. 5. However, the Swishers later testified that they wrote one check

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 23

The Swishers argue that the "conflicting" nature of Chase's evidence is enough to raise a question of fact.[13]  ECF No. 59 at 15.  At one point in their communication with Chase, the Swishers were told the payments were being held in escrow due to the pending short sale, while at a later date the Swishers were told by Chase that the payments had been made and that the CRAs had been notified that the account was paid.  Reardon Decl., ECF No. 34, Ex. 3, 6, 7.  According to the Swishers, the "error" on their credit reports remains today.  ECF No. 59 at 15.

The Court finds this to be another fatal lynchpin to Plaintiffs case.  Plaintiff bears the burden of proof to establish that Chase falsely told credit reporting agencies that two of Plaintiffs' mortgage payments were late.  It does not suffice to merely recount Chase's conflicting evidence, employees speculating that the payments were being held in escrow, or a letter erroneously claiming a payment had been made.  Plaintiffs must come forward with substantial, non-speculative

---

from the Merrill Lynch account and another payment was a wire transfer.  ECF No. 31 at 7.  At oral argument, counsel for Plaintiffs conceded that there was no proof – no documents – that would show any checks or wire transfers were in fact tendered to Chase.

[13] The Swishers also complain about the bad customer service they received during this period.  ECF No. 59 at 15.  This is unfortunate, but not relevant to the issue of whether Chase violated the FCRA.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 24

evidence that the payments were in fact made or tendered to Chase, which they now concede they are unable to do.    Thus, summary judgment in favor of Chase is warranted.

### C. Damages

A furnisher who is negligent in complying with the requirements of the FCRA is liable to the consumer for actual damages and costs of the action together with attorney's fees.  15 U.S.C. § 1681o.  Chase argues that the Swishers filed their initial complaint before any cause of action or liability accrued (see section A supra), and therefore there is no causal connection between compensable damages and a violation of the FCRA when they filed suit. ECF No. 76 at 16.

Given the Court's ruling above, the issues concerning damages are moot.

## V. Defendant's Motion to Exclude Expert Testimony

Chase makes three arguments as to why the Swishers' expert testimony from John Campbell and Al Brown should be excluded at trial, including: failure to make disclosure within deadlines established by the Court, opining on the ultimate issue of law, and failure to disclose qualifications. Plaintiffs acknowledged that these two witnesses will not be offered as experts and at oral argument, Plaintiffs indicated that neither witness would be called at trial.

In light of the Court's ruling herein, Defendant's Motion to Exclude Expert Testimony is denied as moot.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 25

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1. Plaintiffs' Motion to Strike Defendant's Motion for Summary Judgment, ECF No. 57, is **DENIED** as moot.

2. Plaintiffs' Motion to Strike Declaration in Support of Motion for Summary Judgment, ECF No. 52, is **DENIED**.

3. Plaintiffs' Motion to Strike Second Declaration in Support of Motion for Summary Judgment, ECF No. 80, is **DENIED**.

4. Defendant's Motion to Strike Inadmissible Statements from Plaintiffs' Declarations, ECF No. 73, is **DENIED**.

5. Plaintiffs' Motion for Extension of Time to File Second Supplemental Declaration of Suzanne Swisher, ECF No. 101, is **GRANTED**.

6. Defendant's Motion to Exclude Plaintiff's Expert Testimony, ECF No. 35, is **DENIED** as moot.

7. Defendant's Motion for Summary or Partial Summary Judgment, ECF No. 29, is **GRANTED**.

The District Court Executive is hereby directed to enter this Order, enter Judgment accordingly, provide copies to counsel and **CLOSE** the file.

**DATED** this 13th day of December, 2012.

*s/ Thomas O. Rice*

THOMAS O. RICE
United States District Judge

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 26